UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
DWAYNE A. JONES,

                       Petitioner,

               - against -

UNITED STATES OF AMERICA,

                      Respondent.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

13 cv 892 (BMC)

**COGAN**, District Judge.

      Petitioner brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2255, seeking to set aside his sentence, which I imposed upon consideration of a reduced Guideline range as a result of petitioner's participation in this district's "Fast Track" program. He wants to be resentenced without benefit of the "Fast Track" program. Petitioner essentially asserts that he now wishes to oppose his removal from this country as an illegal alien with an aggravated felony conviction, and is willing to incur the possibility of a longer prison term than that to which he was sentenced in order to preserve that right. I find that petitioner has failed to demonstrate grounds that would warrant resentencing, and therefore the petition is denied.

## BACKGROUND

      On August 1, 2012, petitioner pled guilty before Magistrate Judge Gold to a violation of 8 U.S.C. § 1326(a) and (b)(2), illegal re-entry into the United States, having been previously deported after a conviction for the commission of an aggravated felony (conspiracy to defraud the United States). His plea to the illegal reentry charge was pursuant to a plea agreement, in

which the Government agreed, under Guideline 5K3.1, to consent to a four-point reduction in his Sentencing Guideline calculation as part of this district's recently adopted "Fast Track" program. The program, of course, also required that petitioner waive all opposition to removal, and that waiver was set forth in the plea agreement. On December 12, 2012, I sentenced petitioner to time served (about 10 months' custody), and two years' supervised release. His advisory Guideline range, with the Fast Track adjustment, was 6-12 months. I also signed an Order of Judicial Removal with his consent at sentencing, in which he waived his right to contest removal. Without the Fast Track adjustment, petitioner would have had a Guideline range of 15-21 months. Petitioner did not attempt to appeal his plea or sentence.

By letter received on February 14, 2013, petitioner requested that I vacate his sentence and resentence him without benefit of the Fast Track program because he was "unaware and misinform[ed] of the terms of the 'FAST TRACK' plea I agreed to because of the mental state I was in and I now realize the harm I have cause[d] myself." Petitioner asserted that he was "in fear of my life" if he was removed to Jamaica and that his "attorney was aware of my situation … because I told her what I went through there and why I had to leave." He further asserted that he "wasn't aware the plea was so dangerous and harmful to my situation" until his "deportation officer" told him so. By vacating his sentence and sentencing him without Fast Track, it would give him "a chance to fight my deportation proceedings so I can seek whatever reliefs are available to me." He acknowledged awareness of "the 'four' points level that will affect my sentencing guide lines [sic] and it's a harsh reality I am willing to face." Finally, petitioner asserted that he needed this relief because he has four American boys who are in need of him here, and that is another reason why he is seeking the opportunity to oppose removal proceedings.

2

Since the letter did not set forth any legal basis for the relief sought, I advised him, by Order entered February 22, 2013, that the only legally available option to seek this relief was under 28 U.S.C. § 2255. I warned him, among other things, that if he elected to have his letter treated as a habeas corpus petition, any subsequent §2255 filing could be subject to the restriction on "second or successive" petitions. See Adams v. U.S., 155 F.3d 582 (2d Cir. 1998). Finally, I advised him that if he wanted to have his letter treated as a §2255 petition, he could add any additional grounds for relief that he had or offer further support for his claim, but that if he failed to respond, his letter would be treated as a §2255 petition.

Petitioner responded by letter received March 7, 2013 that he did wish to have his earlier letter treated as a §2255 petition, but he did not add any additional claims or support for his initial claim.

## DISCUSSION

Section 2255 of Title 28, United States Code, allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence.[1] To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See Hill v. United States, 368 U.S. 424, 426–27, 82 S.Ct. 468, 470 (1962). "The Court's discretion to grant relief under section 2255 is to be exercised sparingly, for such applications 'are in tension with society's strong interest in the finality of criminal convictions.'" Francis v. United States, No. 02 CV 0468, 2010

---

[1] Since petitioner's request for relief is without merit, I will not rely upon his having waived his right to seek this relief as part of his plea agreement, other than to note that the waiver itself is an additional ground to deny relief here.

WL 1260158, at *3 (E.D.N.Y. March 31, 2010) (quoting <u>Elize v. United States</u>, No. 02 CV 1350, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008).

Petitioner does not offer any support for his assertion that his "mental state" precluded him from understanding that he was waiving his right to challenge removal, and the record contradicts his statement conclusively.  The waiver of the right to oppose removal was detailed in his plea agreement, and when he pled guilty, he acknowledged that prior to appearing for sentencing, he had read the agreement, carefully reviewed it with his lawyer, understood everything in it, had no questions about it, and that everything in it was clear.  Moreover, Judge Gold, in receiving the guilty plea, thoroughly advised petitioner that he was going to be removed as a result of the plea:

> THE COURT: You are agreeing as part of your plea agreement to removal from the United States and that's specifically set out in detail in paragraph 6 of the plea agreement.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: More specifically, you are acknowledging receipt of a notice of intent to request judicial removal and factual allegations in support of judicial removal and that you have signed an agreement or a plea statement in support of judicial removal that will permit the government to remove you, I presume, without any further proceedings being held whatsoever.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

Judge Gold also referred to the removal consequences of the plea when advising petitioner about supervised release:  "Although you will almost certainly be deported or removed from the United States when you finish serving your sentence, you too will be subject to supervised release, at least insofar as you will be prohibited from committing any new crimes at all while you are under supervised release."

As far as petitioner's mental state, Judge Gold was equally thorough in establishing that petitioner was competent to proceed. He elicited that petitioner was taking medication for depression and anxiety, and confirmed with both petitioner and his attorney that the medication did not affect petitioner's ability to think clearly or remain alert. Judge Gold's finding that petitioner knowingly and voluntarily entered into the plea agreement was thus amply supported by the record. That finding is not brought into question by petitioner's conclusory assertion that his mental state deprived him of the ability to understand the terms of his plea agreement.

The Supreme Court, in <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74, 97 S.Ct. 1621 (1977), held that, "the representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." The Second Circuit has also reaffirmed that district courts are "entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator," that the defendant understood the consequences of entering into a plea. <u>United States v. Hernandez</u>, 242 F.3d 110, 112 (2d Cir. 2001).

Moreover, I did not accept petitioner's guilty plea and sentence him until four months after he had pled guilty before Judge Gold. That gave him even more time to appreciate the certainty of removal as a consequence of his plea. At the time of sentencing, I even asked him if he still wanted to plead guilty, and if everything that he had said to Judge Gold was true. I received affirmative answers to both of those questions. The passage of time between his plea before Judge Gold and his re-affirmation of his statements to Judge Gold at sentencing weighs against acceptance of petitioner's newly professed lack of information and awareness. <u>See</u> <u>U.S. v. Doe</u>, 537 F.3d 204, 212 (2d Cir. 2008) ("Whereas a swift change of heart may indicate [a] plea

5

made in haste or confusion, the fact that the defendant waited five months to file his motion strongly supports the district court's finding that the plea was entered into voluntarily") (internal quotation omitted).

Indeed, the inevitably of petitioner's removal to Jamaica was offered and considered as a significant mitigating circumstance at sentencing, both by his attorney and by me. As his attorney offered in mitigation, "[H]e has to really reconstruct his life and start over in Jamaica, a country that for him at this moment really feels like a foreign place." In imposing sentence, I advised petitioner: "Mr. Jones, as tough as it may be, you've just got to understand, every time you come back here, the next time it will be a two-year sentence and then it will probably be a four-year sentence. And you've just got to make your life back in Jamaica, as Ms. Cesare [his Federal Public Defender] is suggesting that you will." Petitioner was of course given an opportunity to speak but chose not to.

At most, petitioner suggests that he has since reevaluated his circumstances and thus has changed his mind about accepting the terms of his plea agreement. But the Second Circuit and district courts within this Circuit have repeatedly rejected requests for withdrawal of a guilty plea or resentencing pursuant to habeas corpus that is based on a petitioner's change of heart. See e.g. United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997) ("The fact that a defendant has a change of heart prompted by his reevaluation of ... the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea", quoting United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992)); Burnell v. U.S., Nos. 06 cr 497, 09 cv 375, 2009 WL 3698386, *5 (N.D.N.Y. Nov. 2, 2009) ("Petitioner's signature on the plea agreement and his statements during the plea colloquy carry such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving

6

and contradictory testimony as to whether a plea was knowingly and intelligently made") (internal quotation omitted); Arkelian v. U.S., 2009 WL 211486, *8 (S.D.N.Y. Jan. 28, 2009) ("As the Second Circuit has commanded, the mere change of heart of a defendant, which is what Petitioner's papers evince here, is insufficient to mandate that a Court permit defendant to withdraw his guilty plea."); Valencia v. U.S., No. 06 civ. 4060, 2007 WL 3105817, *2 (S.D.N.Y. Nov. 14, 2007) ("A plea may not be withdrawn simply because the defendant has a change of heart regarding the potential penalty").

In any event, whether this proceeding reflects a change of perspective or a considered scheme is immaterial. Neither is sufficient for habeas corpus relief. Petitioner has failed to demonstrate grounds for vacating his sentence.[2]

Finally, I have considered whether petitioner is entitled to a hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In light of the overwhelming evidence that he voluntarily and knowingly surrendered his right to oppose removal, petitioner's conclusory assertions do not warrant a hearing. See Chang v. U.S., 250 F.3d 79 (2d Cir. 2001).

## CONCLUSION

The petition is denied and the case is dismissed. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not

---

[2] I do not understand petitioner to be raising any claim of ineffective assistance of counsel. Petitioner has not set forth any particular error or omission by his attorney, and his reference to having disclosed to his attorney the alleged danger he faces in Jamaica upon removal appears to be for the purpose of giving credence to that alleged danger, rather than asserting that his attorney should have done something about it. In fact, his disclosure of the alleged danger in Jamaica to his attorney at the time of his plea – the same alleged fact that he is relying upon here – is a further indication that, at best, petitioner has merely changed his mind in evaluating the factors that led him to enter into the plea agreement.

7

issue.  See 28 U.S.C. § 2253(c).  In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. U.S., 369 U.S. 438 (1969).

**SO ORDERED.**

							_____
							U.S.D.J.

Dated:  Brooklyn, New York
	    March 15, 2013